IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-643-FL

| | | |
|---|---|---|
| MARY J. CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| N.C. DHSS, | ) | |
| | ) | |
| Defendant. | ) | |

This employment discrimination matter is before the court upon defendant's motion to dismiss (DE 8). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted.

### STATEMENT OF THE CASE

Plaintiff commenced this action pro se on November 30, 2020, alleging discriminatory conduct by defendant in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the Americans with Disabilities Act ("ADA"). Specifically, plaintiff alleges a hostile work environment, discriminatory failure to promote, and discriminatory changes to her work duties on the basis of her race, age, and disability. Plaintiff's only explicitly sought relief is designation of her prior sick leave as administrative leave.

Plaintiff appended to her complaint the following documents, which the court treats as part of her pleadings, Fed. R. Civ. P. 10(c): 1) a notice of right to sue from the Equal Employment Opportunity Commission ("EEOC"); 2) plaintiff's response to defendant's position statement before the EEOC; 3) a document entitled "Hostile Work Environment" laying out a relevant factual

narrative; 4) a memorandum to Nancy Brewer ("Brewer") and Linda Washington ("Washington"), purported employees of defendant, from plaintiff; and 5) a letter from North Carolina's Office of Administrative Hearings notifying plaintiff of her failure to pay a filing fee.

Defendant seeks dismissal of plaintiffs' complaint for lack of personal jurisdiction, insufficient service of process, insufficient process, and failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(2), (4)-(6). Defendant relies on email correspondence from plaintiff to Pearla Alston, an employee relations manager of defendant. Plaintiff's response in opposition seeks to introduce numerous, additional evidentiary materials including: 1) an image of a cockroach; 2) letters from plaintiff's healthcare provider; 3) correspondence between defendant's employees and plaintiff and between various employees; 4) memoranda, narratives, and documents written by plaintiff; 5) a grievance form filed with defendant's Human Resources Office; and 6) a position description and checklist for plaintiff's employment position.

## STATEMENT OF FACTS

The facts alleged in plaintiffs' complaint may be summarized as follows.[1]

Plaintiff has worked for defendant for the past 18 years and, during the relevant time period, worked as a lead office assistant in the Durham Unit Office. (See Compl. at 3; Pl.'s EEOC Resp. (DE 1-2) at 2). At the time of the complaint, plaintiff was 67 years old and suffered from a heart murmur. (See Pl.'s Factual Narrative (DE 1-3) at 4).

In the fall of 2018, plaintiff was accused of "bully[ing] the staff" and was later informed by Alma Taylor ("Taylor"), a regional director for defendant, via November 1, 2019, letter, that Judi

---

[1] As addressed below, the court does not, in resolving the instant motions, consider plaintiff's later-filed factual matter, appended to her response to the instant motion to dismiss. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (enumerating the permissible universe of documents reviewable in resolving a motion to dismiss for failure to state a claim); United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 459 n.8 (4th Cir. 2013) (explaining that in contesting a Rule 12(b)(6) motion, a plaintiff "cannot cure pleading deficiencies in the . . . complaint with later-filed supporting documentation").

2

Yonai ("Yonai") had complained of such. (See Pl.'s EEOC Resp. (DE 1-2) at 2). Plaintiff was not allowed to see a copy of the complaint or related report. (See Pl.'s Factual Narrative (DE 1-3) at 2). She further alleges that there was not a proper or complete investigation into Yonai's complaints against plaintiff. (See Pl.'s Feb. 27, 2020, Mem. (DE 1-4) at 2).

In March 2019, plaintiff underwent right knee replacement surgery. (See Pl.'s EEOC Resp. (DE 1-2) at 2). Plaintiff's planned date to return to work was June 3, 2019. (Id.). Plaintiff alleges that she submitted the necessary information to return to work but that delays were caused by various circumstances, including deficient forms sent by defendant to her healthcare provider. (See id. at 1). She was informed by Taylor "not to return back to work on . . . June 3, 2019." (Id.). Plaintiff returned to work on August 12, 2019. (Id. at 2). In total, plaintiff took ten weeks of sick leave between March and August 2019. (Compl. at 3).

While plaintiff was on leave, applicants for a vacant processing assistant position were informed that plaintiff was the former lead office assistant, that she had been removed from the position because she "bull[ied] the staff," and that plaintiff was not likely to return from her leave due to her impending retirement. (Pl.'s EEOC Resp. (DE 1-2) at 2).

Additionally, while plaintiff was on leave, Ashley McKenna ("McKenna") had taken over as the new unit manager. (Id.). Plaintiff alleges that on her return from leave her previous job duties were taken away (for example, she was no longer allowed to use the printer) and that she was given new job duties such as "look[ing] for jobs for [defendant's] clients," "set[ting] up for the clients to come to Employment Marketing classes," and "assisting the Vocational Evaluator." (See id. at 3). In short, plaintiff's coworker and new supervisors were "mean spirited, unfriendly, and acted as if" plaintiff and others had not been trained. (Id.) After the new supervisors started in their role, plaintiff

3

Case 5:20-cv-00643-FL   Document 13   Filed 09/22/21   Page 3 of 15

alleges that 14 employees were "lost," which she describes as consisting of "[t]welve minorities and two whites." (Id.).

Plaintiff alleges that, specifically, on December 3, 2019, she came into work and learned that certain individuals had been told to move to new offices. (See Pl.'s Factual Narrative (DE 1-3) at 1). Yonai entered the hall around this time and, in an "angry," "harsh," "aggressive," and "rude" fashion, informed plaintiff and others that McKenna had directed this new policy. (Id.). Plaintiff alleges that Yonai is often hostile to "some of the minority staff" and comments on their coming into the office late. (Id.). Plaintiff filed a complaint regarding Yonai's conduct but met with McKenna first, during which the two discussed a former, allegedly problematic, employee named Tammy Elliot. Plaintiff further alleges that McKenna habitually "label[s] minorities as 'passive aggressive.'" (Id. at 4).

On January 22, 2020, plaintiff was informed by McKenna that, based on a November 1, 2019, memorandum, plaintiff was no longer to use the "Lead Office Assistant" title, that her position would be open for applications, and that her office was being moved. (Id.). On February 24, 2020, plaintiff's "annual VIP review was held" during which she met with McKenna and the assistant unit manager. (Pl.'s Feb. 27, 2020, Mem. (DE 1-4) at 1). Plaintiff asserts that she was told she needed to ask permission to take leave, a requirement plaintiff alleges has not been applied to other employees. Plaintiff was directed to not email the office's staff unless McKenna approved and was told to avoid contact with Yonai. Finally, plaintiff was made to return her "master key" to the office. (Id. at 2).

Plaintiff has applied, since June 2020, for two new positions for which she was not interviewed. (Compl. at 3). Plaintiff alleges that her EEOC claim was dismissed and that she received a right-to-sue notice on September 7, 2020. (Id. at 1; see also EEOC Dismissal and Notice of Rights (DE 1-1) (noting a mailing date of September 3, 2020)).

# COURT'S DISCUSSION

A. Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Process, and Insufficient Service

A motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(4) challenges the sufficiency of process, while Rule 12(b)(5) motions challenge the sufficiency of service of process. See Fed. R. Civ. P. 12(b)(4), (5). Further, "a failure to obtain proper service on the defendant deprives the court of personal jurisdiction over the defendant," Koehler v. Dodwell, 152 F.3d 304, 306 (4th Cir. 1998), implicating Rule 12(b)(2) as a basis for dismissal. See Fed. R. Civ. P. 12(b)(2) ("lack of personal jurisdiction").

Rule 4 provides that "[t]he plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)." Fed. R. Civ. P. 4(c)(1); see also Fed. R. Civ. P. 4(c)(2) (explaining that a party to the instant suit may not serve a summons and complaint). Rule 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Id. (emphasis added).

Given that defendant is a "state-created governmental organization," plaintiff is required to have either "deliver[ed] a copy of the summons and of the complaint to its chief executive officer" or to have "serv[ed] a copy of each in the manner prescribed by that state's law for serving a summons . . . on such a defendant." Fed. R. Civ. P. 4(j)(2). North Carolina state law requires that service on an agency of the state be made "by personally delivering a copy of the summons and of the complaint to the process agent appointed by the agency . . . by mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to said process agent." N.C. R. Civ. P. 4(j)(4)(a); see also N.C. R. Civ. P. 4(j)(4)(b)-(c) (explaining that if the agency fails to

5

appoint a process agent, service may be made upon the Attorney General or a deputy or assistant attorney general). North Carolina's official online process-agent directory indicates that "Lisa G. Corbet," defendant's general counsel, is defendant's appointed process agent. Process Agent Directory, N.C. Dep't of Just., https://ncdoj.gov/legal-services/legal-resources/process-agent-directory/ (last visited Sept. 22, 2021).

Here, plaintiff has not attempted to demonstrate service, and her proposed summons does not indicate Lisa G. Corbet as the person to be served. (See Pl.'s Proposed Summons (DE 1-7) at 1). Accordingly, plaintiff has failed to show that proper service of process has been effected or good cause for that failure. Therefore, defendant's motion to dismiss pursuant to Rules 12(b)(2), (4), and (5) is granted, and plaintiff's complaint is dismissed without prejudice.

B.   Motion to Dismiss for Failure to State a Claim

In addition, plaintiff's complaint must be dismissed without prejudice for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

1.   Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider " legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (quotations omitted).

6

2. Analysis

Although plaintiff does not cite any relevant statutory provisions, her assertion that she was "discriminated [against] due to [her] race, age, and disability" and the evidence of her filing with the EEOC, (see Compl. at 2), lead the court to construe her claims as arising from Title VII for racial discrimination and for a hostile work environment, from the ADA for disability discrimination, and from the ADEA for age discrimination. See DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018) ("[W]e construe pro se pleadings liberally.").

a. Title VII Claim

Title VII prohibits any employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment[] because of such individual's race." 42 U.S.C. § 2000e-2(a). As illustration, a prima facie case of Title VII discrimination requires a showing of "(1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); see, e.g., Williams v. Giant Food Inc., 370 F.3d 423, 430 (4th Cir. 2004) (explaining that a claim for failure to promote may be based upon allegations that "(1) [plaintiff] is a member of a protected group, (2) there was a specific position for which she applied, (3) she was qualified for that position, and (4) [defendant] rejected her application under circumstances that give rise to an inference of discrimination."); see also Coleman, 626 F.3d at 190 ("[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" (second alteration in original) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-15 (2002)) (quoting Twombly, 550 U.S. at 555)).

At its core, a Title VII claim must be supported by factual allegations sufficient "to satisfy the elements of a cause of action created by that statute," meaning an adverse employment action <u>because of</u> plaintiff's protected characteristic. See <u>McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.</u>, 780 F.3d 582, 585 (4th Cir. 2015). It is not enough to allege that defendant took the action and that plaintiff has a protected characteristic. See <u>id.</u> at 586 ("While the allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff is <u>consistent</u> with discrimination, it does not alone support a <u>reasonable inference</u> that the decisionmakers were motivated by bias.").

Here, plaintiff has failed to allege sufficient factual matter to support a reasonable inference that any adverse employment action was <u>because of</u> her race. See, e.g., <u>id.</u> at 585 ("While [plaintiff] did allege that [defendant] failed to hire her, she did not allege facts sufficient to claim that the reason it failed to hire her was because of her race or sex."). She alleges that her job duties were altered, (<u>see</u> Pl.'s EEOC Resp. (DE 1-2) at 3) and that she has applied for certain positions but did not receive interviews, (<u>see</u> Compl. at 3). However, plaintiff does not allege any facts to support a reasonable inference that either was because of her race. Plaintiff's conclusory assertion that defendant's actions were based on her race (<u>see</u> Compl. at 2), does not suffice. <u>McCleary-Evans</u>, 780 F.3d at 585 ("To be sure, [plaintiff] repeatedly alleged that [defendant] did not select her because of the relevant decisionmakers' bias against African American women. But those 'naked' allegations—a 'formulaic recitation' of the necessary elements—'are no more than conclusions' and therefore do not suffice." (quoting <u>Iqbal</u>, 556 U.S. at 678)).

Another way "[a]n employer contravenes § 2000e–2(a)(1) [is] by . . . requiring an . . . employee to work in a racially hostile environment." <u>Boyer-Liberto v. Fontainebleau Corp.</u>, 786 F.3d 264, 277 (4th Cir. 2015) (en banc).

> To state a hostile work environment claim, [plaintiff] must allege that: (1) she experienced unwelcome harassment; (2) the harassment was based on her . . . race . . . ;

8

(3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.

Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Crucially, like any other Title VII claim, a racially hostile work environment claim requires that the harassing "actions . . . occur because of" plaintiff's race because "Title VII does not prohibit all verbal or physical harassment in the workplace," but rather impermissibly discriminatory harassment. Strothers v. City of Laurel, 895 F.3d 317, 329 (4th Cir. 2018) (emphasis added) (quotation omitted).

Further, "when determining whether the harassing conduct was objectively severe or pervasive, we must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). "Rude treatment by coworkers, callous behavior by one's superiors, or a routine difference of opinion and personality conflict with one's supervisor, are not actionable under Title VII." Perkins v. Int'l Paper Co., 936 F.3d 196, 208 (4th Cir. 2019). For example, allegations that amount to "a story of a workplace dispute . . . and some perhaps callous behavior by [plaintiff's] superiors" fail to state a claim. Bass, 324 F.3d at 765.

Here, plaintiff's allegations do not support a reasonable inference that the alleged harassment was because of her race or that it was sufficiently severe or pervasive as to alter the conditions of the workplace. See generally Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, (1993). She alleges that a coworker, Yonai, in a specific incident, was "very aggressive, harsh, loud and very unprofessional," (see Pl.'s Factual Narrative (DE 1-3) at 1), but does not allege sufficient factual support to raise a reasonable inference that Yonai engaged in the alleged conduct because of plaintiff's race. Nor does the allegation that Yonai was rude to "some of the minority staff," (id.) without more, make such bias in Yonai's interactions with plaintiff plausible. See, e.g., Irani v. Palmetto Health, 767 F. App'x 399,

9

417 (4th Cir. 2019) (explaining that a Title VII claim would not lie even where a supervisor "made unwelcome racist comments" and had a "fraught" relationship with employee-plaintiff when there was no indication that the "strained relationship was based upon . . . race."). Further, Yonai's alleged conduct resembles the kind of workplace dispute due to rude or callous behavior that is not actionable as workplace harassment, especially, here, where this is no indication as to the frequency of this conduct.

Similarly, allegations that McKenna engaged in "passive aggressive," "unprofessional," "childish," or "petty" conduct, (see Pl.'s Factual Narrative (DE 1-3) at 4; Pl.'s Feb. 27, 2020, Mem. (DE 1-4) at 1-2), fail to raise a reasonable inference of workplace conduct that "amount[s] to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998), as opposed to a "mere workplace squabble." Strothers, 895 F.3d at 330; see also Bass, 324 F.3d at 765 ("[Plaintiff's] complaint is full of problems she experienced with her co-workers and supervisors. These facts, however, do not seem to have anything to do with gender, race, or age harassment.").

Moreover, the complaint does not contain any sufficient factual allegation giving rise to a reasonable inference that McKenna's conduct towards plaintiff was because of plaintiff's race. The fact that during McKenna's tenure "twelve minorit[y]" employees left defendant's employ does not, standing alone, support a reasonable inference of impermissible racial bias on McKenna's part. (See Pl.'s EEOC Resp. (DE 1-2) at 3). Similarly, that McKenna allegedly "label[s] minorities as 'passive aggressive,'" (Pl.'s Factual Narrative DE 1-3) at 4), does not rise to an inference of the requisite level of severe conduct. See Harris, 510 U.S. at 21 (explaining that the "'mere utterance of an . . . epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII" (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986))); EEOC v. Fairbrook Med. Clinic, P.A., 609 F.3d 320, 328 (4th Cir. 2010) (distinguishing

between "generalized statements that pollute the work environment and personal [protected characteristic]-based remarks that single out individuals for ridicule" (quotation omitted)).

In sum, plaintiff has failed to sufficiently allege factual matter to support a Title VII claim for racially discriminatory adverse employment action or for a racially hostile work environment.[2] Accordingly, those claims are dismissed without prejudice.

      b.      ADEA Claim

The ADEA, in language similar to Title VII, prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment[] because of such individual's age." 29 U.S.C. § 623. While the two statutes differ in some ways, see, e.g., Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 173 (2009) ("Title VII is materially different with respect to the relevant burden of persuasion . . . ."), as relevant here, "[t]he standards governing [plaintiff's] Title VII and ADEA claims are similar." Barnes v. Charles Cty. Pub. Sch., 747 F. App'x 115, 117 n.* (4th Cir. 2018); see also Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141 (2000) (assuming without deciding that an evidentiary framework developed to assess claims in the Title VII context was applicable in the ADEA context). Accordingly, the court looks to whether plaintiff has "alleg[ed] facts to satisfy the elements of a[n] [ADEA] cause of action," namely, that the allegedly discriminatory act was "because of [plaintiff's] age." See Song v. Becerra, __ F. App'x __, 2021 WL 3732961, at *1 (4th Cir. 2021) (quotation omitted).

Here, plaintiff alleges that she is 67 years old, (Pl.'s Factual Narrative (DE 1-3) at 4), meaning she falls within the ambit of the ADEA, see 29 U.S.C. § 631(a) ("The prohibitions in [the ADEA] shall be limited to individuals who are at least 40 years of age."). However, she fails to allege any

---

[2] For the same reasons plaintiff fails to allege sufficient factual matter to state a claim for hostile work environment on the basis of race, she also fails to state such a claim on the basis of age or disability. Any claims implied in plaintiff's pleadings on those bases are also dismissed without prejudice.

facts that would support a reasonable inference that any adverse employment action taken against her was because of her age. See, e.g., Buchhagen v. ICF Int'l, Inc., 545 F. App'x 217, 220 (4th Cir. 2013) (explaining that plaintiff alleged sufficient factual support "[a]s to the requirement that her age was the cause of her termination," where she alleged multiple, specific instances of disparate treatment as joined by allegations of pretext). Lacking sufficient supporting factual matter, plaintiff's ADEA claim is dismissed without prejudice.

      c.     ADA Claim

"The ADA protects an employee against discrimination by an employer if the employee is 'a qualified individual with a disability.'" Pollard v. High's of Balt., Inc., 281 F.3d 462, 467 (4th Cir. 2002) (quoting 42 U.S.C. §§ 12111(2), 12112(a)). "To establish a claim for disability discrimination under the ADA" a plaintiff must allege facts supporting "(1) that she has a disability, (2) that she is a 'qualified individual' for the employment in question, and (3) that [her employer] discharged her (or took other adverse employment action) because of her disability." See Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 572 (4th Cir. 2015) (quotation omitted); see Pollard, 281 F.3d at 467 ("[I]n order to come within the ADA's protected class, a plaintiff must first show that she is disabled within the meaning of the Act.").[3]

"Disability" within the meaning of the ADA is "a physical or mental impairment that substantially limits one or more major life activities."[4] 42 U.S.C. § 12102(1)(A); see also id. § 12102(2) ("[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking,

---

[3] Because the complaint and attached documents do not indicate that plaintiff sought an accommodation for any disability, the court does not analyze whether she has stated a reasonable accommodation claim. See generally 42 U.S.C. § 12112(b)(5)(A).

[4] An individual is also disabled within the meaning of the ADA if he or she "has a record of such an impairment[] or . . . [is] regarded as having such an impairment." 42 U.S.C. § 12102(1)(B)-(C).

12

breathing, learning, reading, concentrating, thinking, communicating, and working."). A substantially limiting impairment is one that "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

Here, the court assumes without deciding that a heart murmur is a physical impairment. See 29 C.F.R. § 1630.2(h)(1) (defining physical or mental impairment as "[a]ny physiological disorder or condition . . . affecting one or more body systems, such as . . . [the] cardiovascular"). However, plaintiff fails to allege facts that support a reasonable inference, or even indicate, how this physical impairment impacted her ability to engage in a major life activity. See, e.g., Miller v. Md. Dep't of Nat. Res., 813 F. App'x 869, 875-76 (4th Cir. 2020) (per curiam) (holding that even where a plaintiff alleges factual matter indicating he has "difficulties" with major life activities, this fails to allege substantial limitation). And although plaintiff alleges she underwent "right knee replacement surgery," (Pl.'s EEOC Resp. (DE 1-2) at 2), she does not allege that she suffered an actual disability due to a related physical impairment upon returning from this surgery or that she was perceived as being disabled by any relevant decisionmakers. See, e.g., Wicomico Nursing Home v. Padilla, 910 F.3d 739, 751 (4th Cir. 2018) (explaining that the allegation that plaintiffs are "qualified individuals with a disability" is inadequate when "[t]his conclusory phrase is the sum total of the Complaint's allegations addressing the elements of an ADA claim"). Nor has plaintiff alleged sufficient factual matter to support a reasonable inference that she had "a history of, or has been misclassified as having, a . . . physical impairment that substantially limits one or more major life activities." Reynolds v. Am. Nat. Red Cross, 701 F.3d 143, 153 (4th Cir. 2012) (quotation omitted).

Further, even assuming that plaintiff had adequately alleged an ADA disability, she has not alleged sufficient, non-conclusory facts to state a plausible claim that defendant took adverse

13

employment actions against her because of her disability. That plaintiff allegedly had her job duties changed and was unable to obtain a promotion after returning from leave is certainly "consistent" with discrimination on the basis of a disability related to that leave, but "it does not alone support a reasonable inference that the decisionmakers were motivated by bias." Cf. McCleary-Evans, 780 F.3d at 586 (emphasis omitted).

Plaintiff fails to include the necessary factual allegations to "'nudge[] [her] claims' of invidious [ADA] discrimination 'across the line from conceivable to plausible.'" See Iqbal, 556 U.S. at 680 (quoting Twombly, 550 U.S. at 570). Therefore, her ADA claim is dismissed without prejudice.

In sum, plaintiff has failed to include in her complaint the requisite factual allegations to state claims to relief, under any of the relevant legal theories, that are plausible on their face. And plaintiff "cannot cure pleading deficiencies in the . . . complaint with later-filed supporting documentation," such as that included in her response to the instant motion. United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 459 n.8 (4th Cir. 2013); see also Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016) (enumerating the permissible universe of documents reviewable in resolving a motion to dismiss for failure to state a claim). However, such factual insufficiencies guide that dismissal should be without prejudice and that plaintiff should be "permitt[ed] . . . an opportunity to amend." See Ostrzenski v. Seigel, 177 F.3d 245, 252 (4th Cir. 1999); Domino Sugar Corp. v. Sugar Workers Loc. Union 392, 10 F.3d 1064, 1066 (4th Cir. 1993) (adopting the reasoning that a complaint is dismissed without prejudice where "the plaintiff may be able to amend his complaint to cure whatever deficiencies had caused it to be dismissed" (quotation omitted)). Further, plaintiff's response to the instant motion to dismiss, with its appended supporting

factual documents, (see Pl.'s Resp. (DE 11) passim), indicates plaintiff's desire for the court to consider further factual allegations not included in her initial pleadings.

Accordingly, defendant's motion to dismiss is granted without prejudice, with leave for plaintiff to file an amended complaint within 30 days of this order. If plaintiff seeks to continue the instant action in this court, her amended complaint must set forth all relevant, specific factual allegations that "plausibly suggest an entitlement to relief," as detailed above. Iqbal, 556 U.S. at 681. The amended complaint will be considered the complaint in its entirety, and the court will not review plaintiff's prior filings or other documents in the record to identify any misplaced claims. In the event plaintiff files an amended complaint, as directed herein, plaintiff is allowed a period of time of 60 days from the date of this order to effectuate service and to file proof of service.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 8) is GRANTED. Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff is allowed a period of time of 30 days, from the date of this order, to file an amended complaint as described herein. Plaintiff is allowed a period of time of 60 days from the date of this order to effectuate service, in accordance with the requirements set forth herein, and to file proof of service. In the event plaintiff fails to file the amended complaint described above within 30 days of the date of this order, the clerk is DIRECTED to close this case without further order of this court.

SO ORDERED, this the 22nd day of September, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge